IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| H.G. and G.G., Parents, Individually and as Next Friends of C.G., Student,<br><br>Plaintiffs,<br><br>v.<br><br>M.S.D. of Warren County,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Case No.:4:25-cv-53<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT and DEMAND FOR TRIAL BY JURY**

COME NOW, C.G., a Student, By and With His Parents and Next Friends, H.G. and G.G., and do hereby bring this action against Defendant school corporation M.S.D. of Warren County (hereinafter "Warren") for damages suffered as a result of discrimination against H.G., G.G., and their child C.G. on the basis of C.G.'s disability. Plaintiffs hereby request a trial by jury in this matter.

## **INTRODUCTION**

1. This action is brought pursuant to the Fourteenth Amendment of the U.S. Constitution, Section II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Title IX of the Civil Rights Act, and in tort.

2. H.G., G.G., and C.G. live in Warren County, Indiana. Warren is located in Warren County.

3. C.G. is a qualified individual with a disability and was at all times relevant, a student at Warren.

1

4. Warren is an Indiana public school corporation that receives federal funding for the education of students with disabilities and other services.

5. Warren discriminated against G.C. on the basis of his disability and sex and as a result, H.G., G.G., and C.G. have suffered emotional, pecuniary, and actual damages.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this case pursuant to 28 USC §1331 and §1367, the Fourteenth Amendment, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act and Title IX of the Civil Rights Act.

7. This Court, without regard to the amount in controversy, has jurisdiction over the Plaintiffs' request pursuant to federal statutes and Indiana statutes.

8. Venue is proper in the Northern District of Indiana, Hammond (Lafayette) Division, because all of the actions took place in Warren County. Additionally, the parties lived, resided, attended school, or were incorporated in Warren County, Indiana when all the relevant action took place.

## PARTIES

9. H.G., G.G., and their child, C.G. live in Warren County, Indiana, and C.G. has legal residence within the Warren school boundaries.

10. C.G. is a qualified individual with a disability and his parents are H.G. and G.G..

11. Warren is a public-school corporation in Warren County, Indiana and located at 101 North Monroe Street, Williamsport, IN 47993.

## FACTS APPLICABLE TO ALL COUNTS

12. C.G. is a tenth-grade student at Warren. He is a qualified individual with a disability as a student diagnosed with ADHD and anxiety.

13. On or about December 2024, C.G.'s parents, G.G. and H.G., were made aware that C.G.'s ex-girlfriend, A.H., was accusing C.G. of sexual assault. C.G. adamantly denies that anything non-consensual happened.

14. On or about January 1, 2024, C.G.'s parents learned that A.H. filed a formal police report addressing the allegations.

15. On or about January 3, 2025, C.G. returned to school. At school, it was evident that other students and teachers had heard about the allegations. C.G. spent most of the school day in the nurse's office getting sick due to the anxiety.

16. On or about January 6, 2025, the School Resource Officer ("SRO") called C.G.'s parents, stating that one of A.H.'s friends' father came to the school and told the school to keep C.G. away from his daughter and A.H., alleging C.G. had sexually assaulted A.H.

17. Neither A.H.'s friend nor her father witnessed any sexual assault.

18. Upon information and belief, on or about January 6, 2025, A.H. was accommodated with a scheduled change so that C.G. and A.H. were separated at school.

19. On or about January 2025, C.G.'s parents discovered that A.H.'s mother called the school board members accusing C.G. of sexually assaulting her daughter.

20. On or about January 17, 2025, A.H. filed a protective order against C.G. in the local county court.

21. G.G., a police officer, received a call from his boss, stating that the department had received the protective order.

22. G.G. then went to the school to talk to the principal, Dr. Cripe ("Cripe"), who said nothing would change or affect C.G.'s education. Cripe stated that C.G. would be able to attend class and extracurricular activities. Cripe continued by telling C.G. not to use his locker but instead to use his grandmother's classroom, as she is a teacher at the school.

23. On or about January 22, 2025, A.H. continually brought up C.G. to other classmates, prompting them to tell teachers about how they were uncomfortable with A.H.'s comments. A.H. also discussed the county protective order and went so far as to show a copy of the order to other students.

24. On or about February 2025, C.G. and his parents filed to contest the protective order in county court.

25. On or about March 25, 2025, the protective order was amended to prohibit C.G. from communicating with A.H. or going to her house.

26. G.G. and H.G. then met with the school to discuss the protective order. Cripe stated that C.G. was still able to attend classes, but could not go

4

to his locker or eat in the cafeteria with his peers. Instead, he would store his belongings and eat lunch in his grandmother's classroom.

27. At no point in time did the school conduct an investigation of the allegation.

28. When C.G. tried to eat lunch in the cafeteria with his peers, Cripe would discipline C.G. by sending him to the office.

29. On or about April 7, 2025, G.G. and H.G. received a call from the school that C.G. had violated the county protective order by being at his locker. G.G. and H.G. met with Cripe and the assistant principal, Mr. Brown ("Brown").

30. Brown stated that C.G. was at his locker that morning when A.H. saw him and reported it to the school. C.G. went to his locker briefly to look for his book bag. He did not see A.H., nor did he interact with her. C.G.'s parents also noted there was no specific distance restriction within the protective order.

31. Cripe continued that C.G. continues to "break the rules" of the protective order and that the only solution left is for C.G. to finish school at home.

32. G.G. tried to help brainstorm other ways to keep C.G. at school given there was no investigation or conclusion that C.G. engaged in any wrongdoing.

5

33. H.G. raised questions regarding C.G.'s access to his dual credit classes and access to his 504 plan accommodations, given the school's actions would deny him access to both.

34. The school ignored these concerns and did not otherwise accommodate him.

35. The school then sent C.G. home. C.G. was sent home between 9:30 A.M. and 10:00 A.M., resulting in him missing over half a day of school due to the dismissal.

36. At a meeting on or about April 7, 2025, the superintendent told the family that C.G. would need to transfer schools.

37. At no point did the school conduct an investigation or conclude that C.G. had engaged in any wrongdoing. Neither was C.G. expelled nor provided due process under expulsion statutes.

38. On or about April 7, 2025, Cripe demanded that the SRO falsely report that C.G. violated the county protective order.

39. Cripe did not provide the SRO a copy of the protective order, nor any evidence that C.G. had violated the protective order.

40. The SRO felt uncomfortable making a false report and instead reported that C.G. was in the hallway when he should not have been.

41. There was nothing prohibiting C.G. from being in the hallway.

6

42. Later that day, Cripe called C.G. and his parents. Cripe informed them that C.G. would be secluded in the Alternative Education Room and that the school was withdrawing C.G. from his dual credit classes.

43. Cripe also stated that C.G. was not allowed to leave the Alternative Education classroom except for his two allotted breaks a day.

44. Additionally, Warren forced C.G. to use the junior high hallway for the restroom, lunch, and hallway travel.

45. Warren further required C.G. to arrive late and leave early from school to ensure he did not interact with A.H. or anyone else. Often, a teacher would escort C.G. through the building, to the office, or to his car.

46. C.G. was completely restricted from access to benefits and services available to all non-disabled individuals.

47. Warren prohibited C.G. from leaving the Alternative Education classroom for testing, despite his 504 plan stating otherwise.

48. On or about April 8, 2025, H.G. contacted C.G.'s teachers directly to suggest alternatives to withdrawal or the Alternative Education classroom, but was denied.

49. Once C.G. was placed in the Alternative Education classroom, Cripe checked on him to see whether his work was getting done. Cripe did not check on C.G.'s mental health or well-being.

50. On or about April 21, 2025, C.G. arrived at school looking unwell. The school nurse came down to look at him and proceeded to take C.G. to her office, which is located in the high school hallway.

51. While traveling to her office, Cripe followed C.G. and the nurse, stating that C.G. is not supposed to be in the hallway.

52. The school nurse assessed C.G. and sent him home that day. Teachers then witnessed Cripe and Brown go into the school nurse's office, presumably to have a conversation about C.G.

53. On or about April 27, 2025, C.G. got called into the office.

54. C.G. was removed by a classroom teacher from the Alternative Education classroom and placed in the sensory room for testing.

55. The next day, Cripe admonished C.G. for leaving the Alternative Education classroom, as he was not allowed to leave under any circumstances.

56. G.G. and H.G. reached out to every level of administration, including the school board, to try to resolve C.G.'s placement, but to no avail.

57. The Alternative Education classroom has no teacher interaction or instructions. C.G. is expected to learn and complete his work on his own.

58. Furthermore, the school has failed to provide C.G. with his 504 plan accommodations while in the Alternative Education Room.

59. Warren's disparate treatment of C.G. continues to harm him and his family and continues to cause them to suffer financially and emotionally.

**COUNT 1 – VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION**

8

60. Plaintiffs hereby replead and incorporate by reference paragraphs 1-59.

61. C.G. is an individual with a disability and was entitled to attend school at Warren because he has legal settlement there.

62. Warren is an Indiana public school corporation that receives federal funding for educating students with special needs and other federal funds.

63. Warren violated the Fourteenth Amendment by treating C.G. differently than similarly situated nondisabled and female peers.

64. The Plaintiffs have been emotionally and financially harmed by, and continue to incur loss due to, Defendants' actions.

## COUNT II – VIOLATION OF 42 U.S.C. §1983

65. Plaintiffs hereby incorporate and replead paragraphs 1-64.

66. Warren is a state actor and used its power to willfully, wantonly, and recklessly discriminate against the Family on the basis of C.G.'s disability.

67. Warren used its authority under state law to deprive C.G. access to equal protection under applicable federal laws.

68. Warren conspired against Plaintiffs to deprive them of equal protections under applicable federal laws.

69. Warren's actions were a gross misjudgment and made in bad faith.

70. Warren has a widespread pattern and practice of discriminating against disabled students by not providing them with the same protections as other students or punishing them more frequently for similar behaviors.

71. Warren's relevant policies and practices have had a disparate and disproportionate impact on disabled students.

72. Plaintiffs have been emotionally and financially harmed by, and continue to incur loss due to, Defendants' actions.

### COUNT III – VIOLATION OF AMERICANS WITH DISABILITIES ACT

73. Plaintiffs hereby incorporate and replead paragraphs 1-72.

74. Warren discriminated against the Family on the basis of C.G.'s disability.

75. Warren is a state actor and receives federal funds for C.G.'s benefit, including but not limited to funds under the Elementary and Secondary Schools Emergency Relief Funds, Title One, School Nutrition Funds, and funds under the IDEA.

76. Warren's actions have prevented C.G. from attending school, which is his constitutional right.

77. Warren's actions and inactions created an environment that was severe and pervasive enough to deprive C.G. of access to educational benefits.

78. As a result of discrimination, Plaintiffs have been emotionally and financially harmed and continue to incur loss due to Defendant's actions.

### COUNT IV – VIOLATION OF SECTION 504

79. Plaintiffs hereby replead and incorporate by reference all allegations in paragraphs 1-78.

80. C.G. is a qualified individual with a disability.

81. Warren's actions prevented C.G. from attending school and receiving reasonable accommodations, even though he had a constitutional right to both.

82. Warren's actions and inactions created an environment that was severe and pervasive enough to deprive C.G. of access to educational benefits.

83. As a result of discrimination, Plaintiffs have been emotionally and financially harmed an continue to incur loss due to Defendant's actions.

## COUNT V- RETALIATION

84. Plaintiffs hereby incorporate by reference and replead all allegations set forth in paragraphs 1-83.

85. Warren retaliated against the Family for H.G.'s and G.G.'s advocacy for C.G.

86. As a result of Warren's retaliation, Plaintiffs have been emotionally and financially harmed by, and continue to incur loss due to, Defendant's actions.

## COUNT VI- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

87. Plaintiffs hereby incorporate by reference and replead all allegations set forth in paragraphs 1-86.

11

88. Warren engaged in extreme and outrageous conduct that caused emotional distress to the Plaintiffs collectively.

89. Warren's conduct was intentional or reckless.

90. As a result of Warren's intentional and/or reckless conduct, Plaintiffs have suffered emotionally and financially and continue to incur loss.

## COUNT VII- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

91. Plaintiffs hereby incorporate by reference and replead all allegations set forth in paragraphs 1-90.

92. Warren's actions were reckless, intentional, and negligent.

93. As a result of Warren's actions, Plaintiffs have collectively suffered emotional distress.

94. Plaintiffs have suffered financially and emotionally and continue to incur loss as a result of Warren's negligence.

## COUNT VIII- NEGLIGENT SUPERVISION AND TRAINING

95. Plaintiffs hereby replead and incorporate by reference paragraphs 1-94.

96. Warren had a duty to supervise and train teachers and administration working with C.G. and they breached that duty.

97. Warren had a duty to properly investigate allegations of wrongdoing and it breached that duty.

98. Warren negligently supervised and trained the administration working with C.G. and as a result of their failure to supervise administration,

12

Plaintiffs suffered emotional and pecuniary damages and continue to suffer loss due to Defendant's actions.

### COUNT IX- HOSTILE EDUCATIONAL ENVIRONMENT

99. Plaintiffs hereby replead and incorporate by reference paragraphs 1- 98.

100. C.G. is a qualified individual with a disability.

101. Warren receives federal funding to serve C.G.

102. Plaintiffs suffered a hostile educational environment as a result of C.G.'s disability.

103. Warren's treatment of Plaintiffs, collectively, was so severe, pervasive, and offensive, that it denied C.G. access to a free appropriate public education and created a hostile educational environment for him.

104. Warren knew that H.G., G.G., and their child, C.G. were being harassed and treated differently and they were deliberately or recklessly indifferent to it.

105. Warren had the authority to address the harassment and disparate treatment and chose not to or did so woefully inadequately.

106. As a result of the hostile educational environment, H.G., G.G., and their child, C.G. were deprived access to educational benefits to which other nondisabled peers had access.

107. As a result of the hostile educational environment, Plaintiffs collectively suffered emotionally and financially and continue to suffer due to Defendant's actions.

## COUNT X- FAILURE TO ACCOMMODATE

108. Plaintiffs hereby replead and incorporate by reference paragraphs 1-107.

109. C.G. is a qualified individual with a disability.

110. Warren was aware of his disability.

111. Warren failed to accommodate C.G.'s disability.

112. H.G. and G.G. met with Warren a number of times to discuss and advocate for accommodations for C.G.

113. Warren did not allow H.G. and G.G. to be meaningful participants in meetings regarding C.G.'s accommodations.

114. As a result, C.G.'s education plan was not properly developed or implemented and C.G. suffered both discrimination and a hostile educational environment.

115. C.G.'s teachers did not provide the accommodations that were appropriate for C.G.

116. As a result, Plaintiffs, collectively, suffered emotionally and financially and continue to suffer due to Defendant's actions.

## COUNT XI - DISCRIMINATION ON THE BASIS OF ASSOCIATION

117. Plaintiffs hereby incorporate and replead all allegations set forth in paragraphs 1-116.

118. C.G. is a qualified individual with a disability.

119. C.G. is eligible to attend school and has a right to a free appropriate public education.

120. Warren receives federal funding to educate C.G.

121. C.G. did not receive a free appropriate public education.

122. C.G. did not receive reasonable accommodations.

123. C.G. suffered a hostile educational environment.

124. C.G. suffered emotional distress.

125. H.G. and G.G. advocated for C.G. because Warren was not serving him.

126. As a result of their advocacy, H.G. and G.G. were treated differently and were denied access to the same benefits and services available to other families at Warren.

127. Plaintiffs suffered emotionally and financially and continue to suffer due to Warren's discrimination and disparate treatment of them.

## **COUNT XII- FAILURE TO INVESTIGATE**

128. Plaintiffs hereby replead and incorporate by reference paragraphs 1-127.

129. C.G. was bullied, threatened, and harassed by students and the administration at Warren.

130. H.G., G.G., and C.G. reported this disparate treatment to school officials.

131. School officials were either deliberately indifferent to these complaints or inadequately addressed them.

132. Warren had a duty to investigate the claims of harassment against C.G.

133. Warren failed in that duty.

134. As a result of Warren's failure to investigate the claims of disparate treatment, Plaintiffs, collectively suffered emotionally and financially and continue to suffer due to Defendant's actions.

## COUNT XIII - VIOLATION OF TITLE IX

135. Plaintiffs hereby incorporate by reference and replead all allegations set forth in paragraphs 1-134.

136. Warren treated C.G. differently on the basis of his sex.

137. As a result of their actions, Plaintiffs have suffered emotionally and financially and continue to suffer due to Defendant's actions.

## COUNT XIV – DEFAMATION PER SE

138. Plaintiffs hereby incorporate by reference and replead all allegations set forth in Paragraphs 1-137.

139. Warren allowed its students to share and publicize statements regarding C.G.'s alleged criminal conduct.

140. As a result of their actions, Plaintiffs have suffered emotionally and financially and continue to suffer due to Defendant's actions.

## PRAYER FOR RELIEF

141. Plaintiffs hereby incorporate by reference and replead all allegations set forth in paragraphs 1-140.

142. Plaintiffs were harmed as a result of Warren's actions and seek to be made whole financially.

143. Plaintiffs seek financial damages in an amount to be determined at trial.

144. Plaintiffs are entitled to all damages, including but not limited to compensatory and punitive damages.

145. Plaintiffs request a trial by jury to hear their claims.

146. Plaintiffs' attorneys' fees should be reimbursed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court finds against Defendants and for all other relief deemed just.

Respectfully submitted,
CURLIN & CLAY LAW ASSN. OF ATTYS.,

/s/ Alexandra M. Curlin
Alexandra M. Curlin  #24841-49
Curlin & Clay Law
8510 Evergreen Ave., Ste. 200
Indianapolis, IN 46240
amcurlin@curlinclaylaw.com